**HUDSON NEWS COMPANY, Plaintiff,**

v.

**FEDERAL INSURANCE COMPANY,
Defendants.**

No. 02–CV–4810 (WJM).

United States District Court,
D. New Jersey.

April 4, 2003.

Sarkisian, Florio & Kenny by Edward J. Florio, Esquire, Hoboken, NJ, and Law Office of Harry P. Begier, Jr. by Harry P. Begier, Jr., Esquire, Philadelphia, PA, for Plaintiff.

Suarez & Suarez by Vincent R. Puccio, Esquire, Jersey City, NJ, and Paul, Weiss, Rifkind, Wharton & Garrison by Martin London, Esquire, H. Christopher Boehning, Esquire, New York City, for Defendants.

## OPINION

MARTINI, District Judge.

Before the Court is Plaintiff, Hudson News Company's Petition to Remand this matter to the New Jersey Superior Court in Hudson County, pursuant to 28 U.S.C. § 1447, and Defendant, Federal Insurance Company's Cross–Motion for Transfer of Venue to the Southern District of New York pursuant to the Air Transportation Safety and System Stabilization Act, Pub.L. No. 107–42, 115 Stat. 230 (Sept. 22, 2001), amended by the Aviation and Transportation Security Act, Pub.L. No. 107–71, 115 Stat. 597 (Nov. 19, 2001) ("Air Safety Act" or "Act").

For the reasons set forth below, this Court finds that Plaintiff, Hudson News Company's Petition for Remand is **GRANTED,** and Defendant, Federal Insurance Company's Cross–Motion for Transfer of Venue is **DENIED.**

### *FACTUAL BACKGROUND*

Plaintiff, Hudson News Company ("Hudson") is engaged in the business of distributing and selling publications and other items as a wholesaler and retailer at various locations throughout New Jersey, New York, and other states within the United States. (Compl.¶ 1). Defendant, Federal Insurance Company ("Federal") is duly licensed as a property and casualty insurance carrier in the State of New Jersey, and is engaged in the business of selling and issuing insurance policies to the public subject to the laws of the State of New Jersey. (*Id.* ¶ 2). Hudson has its principal place of business in North Bergen, Hudson County, New Jersey. (Def. Notice of Removal ¶ 3). Federal is an Indiana corporation with its principal place of business in Warren, Somerset County, New Jersey. (*Id.* ¶ 4).

It is undisputed that Hudson purchased an insurance policy from Federal covering the period from December 31, 2000, to December 31, 2001. (Compl.¶ 3). In the first quarter of 2001, Hudson became aware of an impending strike at one of their retail locations in Cincinnati, Ohio. (Oberg Aff. ¶ 4). Hudson inquired about coverage for business income losses from their broker, Bruce Gendelman Company, Inc. ("Gendelman") in Milwaukee, Wisconsin, who was also the broker for Federal, in relation to the possible strike. (*Id.* ¶ 5). Gendelman responded that Hudson was not covered for the strike because none of Hudson's retail locations, including the Cincinnati, Ohio location were "scheduled locations" for purposes of determining business income loss. (*Id.* ¶ 6–7). Hudson asked Gendelman how it could obtain insurance coverage for business income losses at the relevant locations. (*Id.* ¶ 8). Gendelman advised that business income worksheets had to be completed for each retail location and submitted to Federal. (*Id.*) Gendelman sent the worksheets to Hudson, who completed approximately forty-four (44) such business income worksheets and sent them back to Gendelman on March 29, 2001. (*Id.* ¶ 9). Federal received these worksheets in early April 2001 in Milwaukee, Wisconsin, the location of Federal's underwriter for the Hudson account. (*Id.* ¶ 10).

Hudson's then existing policy provided for fifteen million dollars ($15,000,000.00) in blanket business income loss coverage at a few "scheduled locations". (*Id.* ¶ 11). Hudson's obvious intent in filling out the 44 business income worksheets was to add those retail locations to the list of scheduled locations, thereby making them subject to the $15 million blanket business income loss coverage. (*Id.*) Without the "scheduling" of these locations, Hudson would have been limited to only fifty-thousand dollars ($50,000.00) per location, in coverage for business income losses. (*Id.* ¶ 12). Hudson contends that they never heard from Federal regarding the work-

sheets again. (*Id.*) Several months later, the September 11, 2001 terrorist attacks on New York destroyed the twin World Trade Center towers ("WTC"), resulting in catastrophic loss of lives, and significant economic casualties. Hudson's retail and other business operations suffered profound effects because of the WTC attacks: business personal property at the WTC was damaged by fire as a result of the attacks, and other physical loss and damages were incurred. (Compl.¶ 3). In addition, the governmental shutdown of air flights caused Hudson to suffer income/earnings loss and extra expenses. (*Id.*)

Hudson submitted a written claim to Federal for losses totaling $16, 653, 696.43 (Compl.Ex.A), a substantial majority of which, ($12, 865, 948.80, as undisputed by Hudson), relates to the destruction of Hudson's retail operations located at the destroyed WTC sites. (*Id.*) Federal disputed Hudson's claim, stating that certain locations, including Hudson's two retail facilities and a proposed café at the WTC site, were not specified in the policy for business income and extra expense coverage, and thus were subject to a limitation of liability for unnamed locations, in the amount of $50,000.00. (Pl. Pet. For Remand ¶ 3). Also, Federal notified Hudson that the 44 locations were not added on as "scheduled locations" and therefore were not subject to the $15 million dollar blanket coverage. (Oberg Aff. ¶ 14). In all, Federal paid a fraction of Hudson's multi-million dollar insurance claim arising out of the WTC attacks.

Hudson evidently disagreed with Federal's valuation of its claim, and on August 12, 2002, submitted a demand for an appraisal pursuant to a provision in the policy, which detailed an appraisal procedure in event that the parties disagreed on the value of the loss or damage. (Pl. Pet. For Remand ¶ 4). Federal never responded to Hudson's demand for appraisal. (*Id.*)

## PROCEDURAL HISTORY

On August 22, 2002, Hudson filed a four-count Complaint in the Superior Court of New Jersey, Hudson County, seeking: (1) a declaratory judgment, brought pursuant to N.J.S.A. 2A:16–52, to determine the respective rights and responsibilities of the parties under the policy; (2) enforcement of the appraisal clause pursuant to the policy; (3) an award of consequential damages, as determined by the appraisal, because of Federal's allegedly deliberate, bad-faith dealings with Hudson; and (4) punitive damages. (Pl.Compl.¶ 3–20).

On October 3, 2002, Defendant removed this action from the Superior Court to the United States District Court for the District of New Jersey, premising removal solely upon § 408 of the Air Safety Act. (Def. Notice of Removal ¶ 6). Federal stated that Congress created a federal cause of action " 'for damages arising out of the hijacking and subsequent crashes' of the aircrafts and (Congress) provided that 'this cause of action shall be the exclusive remedy for damages arising out of the hijacking and subsequent crashes of such flights.' " (Def. Notice of Removal ¶ 7, citing from the Air Safety Act, § 408(b)(1)). Federal also argued that the appropriate venue for this claim was established by the Air Safety Act, which provides, in relevant part that the United States District Court for the Southern District of New York shall have original and exclusive jurisdiction over all actions brought for any claim (including any claim for loss of property, personal injury, or death) resulting from or relating to the terrorist-related aircraft crashes of September 11, 2001. (*Id.* ¶ 3, citing from the Air Safety Act, § 408(b)(3)).

Federal alleged that because Hudson's Complaint asserted "claims for damages arising out of the hijacking and subsequent crashes of the aircrafts, including property damage at the World Trade Center", the federal cause of action delineated in the Air Safety Act was Hudson's exclusive remedy, and thus, this case satisfied the federal question requirement pursuant to 28 U.S.C. § 1331 and 1441(b). (Def. Notice of Removal ¶ 8–9). Furthermore, Federal maintained that because the Southern District of New York was the only court vested with jurisdiction over "actions like this", a motion requesting transfer to that district was being filed simultaneously with the removal application. (*Id.* ¶ 10).

### ANALYSIS

This matter implicates an issue of first impression within this Circuit. The question before this Court is whether this case was properly removed to federal court, i.e., whether this normally litigated state-court declaratory judgment action, is nevertheless a case "resulting from or relating to the terrorist-related aircraft crashes" of September 11 within the meaning of § 408 of the Air Safety Act. If so, this matter should be transferred to the Southern District of New York, and if not, same should be expeditiously remanded back to the Hudson County Superior Court.

### I Plaintiff's Declaratory Judgment Action Does Not Belong in Federal Court.

Federal argues that an over-whelming majority of Hudson's damage claims were directly caused by the terrorist attacks on the WTC, thus bringing this action under the jurisdictional purview of the Air Safety Act. Hudson asserts that this case is merely a state court declaratory judgment action, brought pursuant to N.J.S.A. 2A:16–52, where the Hudson County Superior Court will adjudge whether Federal's response (or non-response) to Hudson's 44 submitted worksheets in April, 2001, entitles Hudson to a blanket coverage of $15 million versus $50,000.00 per location.

Hudson's legal stance predominates. This Court finds that Hudson's plaint is a declaratory judgment action, which properly belongs in Hudson County Superior Court, and not in the Southern District of New York or in the District of New Jersey.

In so ruling, this Court first examines the nature and propriety of Hudson's claims filed in state court. Significantly, Count I of Hudson's Complaint, in relevant part, states:

9. One of the reasons that Federal has failed and refused to pay the balance of Hudson's claim is that there is a dispute between Hudson and Federal over the covered locations of the insurance policy applicable to Hudson's claim.

10. There is, therefore, a case of actual controversy between the parties within this court's jurisdiction and Hudson requests the court to declare Hudson's rights under the insurance policy including resolving the dispute over the covered locations.

11. This court has jurisdiction under New Jersey Statute 2A:16–52 to grant a declaratory judgment in favor of Hudson.

(Pl. Compl. at ¶ 9–11).

Count I of Hudson's Complaint also unambiguously requests a declaration of coverage, without demanding resultant damages. To wit, Hudson prays for a declaration for "its rights under the policy including resolving the dispute over the covered locations and any other dispute between the parties relating to Hudson's claims with the exception of the dispute

between the parties over the amount of loss and damage together with the costs of this action." (*Id.* ¶ 9–11).

Counts II and III are likewise contingent on Count I's viability. Assuming Hudson's prevails on Count I's declaratory judgment action, Count II requests the court to enter an order directing Federal to appoint its appraiser pursuant to the parties' insurance policy, and in the alternative, appointing an umpire, if Federal fails to do same within thirty (30) days. (Pl.Compl.¶ 14–16). Count III requests judgment for consequential damages as assessed by the appraisal panel (thereby bypassing Federal's right to deny Hudson's claim) because of Federal's alleged bad faith-deliberate, overt, and dishonest dealings in denying Hudson's insurance claims. (*Id.* ¶ 17–18). Count IV requests punitive damages because of Federal's alleged bad faith dealings as described above. (*Id.* ¶ 19–20).

At oral argument, Hudson posited that the thrust of the within matter was reformation, and that issues such as damages, number of occurrences, and restoration periods were merely secondary to the coverage issue. Hudson referred to the Oberg Affidavit which detailed inaction by Federal:

> If you read ... Ms. Oberg's Affidavit, you'll see what happened was in the Spring of 2001, [Hudson] had a situation develop where they became aware of the fact that they were under insured in many locations around the country, and called their broker in Milwaukee, and asked them, "What should we do?". He said, "You have to fill out business income worksheets" ... which [Hudson] did and ... sent to Chubb[parent corporation to Federal]. Well Chubb did nothing with [the worksheets] until after September 11th. So our lawsuit is going to focus on Chubb's conduct during the period prior to September 11, in which they did not process these worksheets to give us the coverage for these locations. The damage issues are really peripheral ... the coverage issue here is the main issue.

(Tr. Oral Arg. of 2/27/03 at 17:22–18:12.)

Given the facts of this case, it is certainly undisputable that the herein matter is a declaratory judgment action, where the focus of litigation will be on the parties' actions *prior to September 11, 2001, and as far back as the spring of 2001.* Specifically, the fact-finder will have to determine whether Federal's action or inaction, i.e. its failure to process Hudson's 44 business worksheets received in April 2001, bound Federal to cover those 44 Hudson business locations under the blanket $15 million policy. That requisite query has no concern with the terrorist attacks of September 11. Assuming arguendo, that a covered calamity other than September 11 was responsible for Hudson's damage claims, the same request for declaratory relief and the very same facts predating September 11, 2001, would have to be litigated. The mere fact that the September 11 tragedy caused the damages underlying the disputed insurance claims does not warrant jurisdiction under the Act.

## II The Air Safety Act Does Not Apply to Plaintiff's Declaratory Judgment Action.

Federal argues that the nexus between Hudson's damages, and the events of September 11, 2001, warrants jurisdiction under the Air Safety Act. This Court has, therefore, thoroughly reviewed non-binding precedent that has interpreted the jurisdictional scope of the Act, including but not limited to: *730 Bienville Partners, Ltd. v. Assurance Co. of Am. Int'l.,* 2002 WL 985809 (E.D.La., Apr. 16, 2002); *Canada Life Assurance Co. v. Converium Ruckerversicherung (Deutschland) AG,*

210 F.Supp.2d 322 (S.D.N.Y.2002); *Goodrich Corp. v. Winterthur Intern. Am. Ins. Co.*, 2002 WL 31833646 (N.D.Ohio, June 17, 2002); *International Fine Art & Antique Dealers Show Ltd. v. ASU Int'l, Inc.*, 2002 WL 1349733 (S.D.N.Y., June 20, 2002); *Graybill v. City of New York*, 247 F.Supp.2d 345 (S.D.N.Y.2002); and *Combined Ins. Co. v. Certain Underwriters at Lloyd's London*, 2002 WL 31056851 (S.D.N.Y.2002).

Federal premises its legal argument for jurisdiction on two grounds, first, on the broad language of § 408 of the Act, and second, on *Graybill's* "proximate cause" analysis. This Court rejects both averments.

### 1. *The Air Safety Act Must be Construed Narrowly.*

Federal requests transfer of this action to the Southern District of New York, because it calls for this Court to construe the jurisdictional scope of the Act expansively. Federal maintains that plain language of the Air Safety Act constituted an exclusive federal cause of action which could only be brought in the Southern District of New York. (Def.'s Mem. at 6–7). Federal asserts that Congress has clarified that the Southern District of New York is the *only* proper forum for September 11 cases. In support, Federal cites to comments made in congressional proceedings relative to the Air Safety Act by Senator John McCain: "The bill attempts to provide some sense to the litigation by consolidating all civil litigation arising from the terrorist attacks of September 11 into one court." 147 *Cong. Rec.* S9589, S9594 (Sept. 21, 2001); and Senator Charles Schumer: "It may be a little unclear to some whether all lawsuits or just lawsuits against the airlines will be situated in the Southern District of New York. The intent here is to put all civil suits arising from the tragic events of September 11 in the Southern District." *Id.* at S9592.

However, congressional intent behind the jurisdictional design of § 408(b)(1) or (b)(3) is not as clear as advanced by Federal. Congressional statements explaining the jurisdictional purpose are panoptic and vague. For example: (Statement of Sen. McCain) ("[T]he bill attempts to provide some sense to the litigation by consolidating all civil litigation *arising from* the terrorist attacks of September 11 in one Court."); *Id.* at § 9592 (emphasis added); (Statement of Sen. Leahy) ("*[A]ll* legal cases stemming from those incidents will be consolidated in the United States District Court for the Southern District of New York."); *Id.* at § 9599 (emphasis added); and (Statement of Cong. Oxley)("Certainly there have been precedents for federalizing very limited forms of legal actions. That has generally been limited, however, to situations where the federal government is also assuming direct liability for legal action. This was the case in the recently enacted Air Transportation and System Stabilization Act, which federalized legal actions arising from the September 11 terrorist attack against airlines, but did so in the context of creating a federal fund to pay for the victims' damages.") H.R.REP. No.107–300, pt. 1, at 42–43 (2001).

Additionally, most, if not all courts addressing the jurisdictional effect of the Air Safety Act have narrowly construed the scope of § 408(b)(1) and (3). *See, e.g., Graybill*, at 350–51. ("[D]espite the lawmakers' professed concern for consistent results, nowhere does the legislative history suggest that any case, however tangentially connected to the events of September 11, should be brought exclusively in the forum provided by Section 408(b)(3). A line must be drawn to include what Congress intended to reach, and to exclude duties and rights which are traditionally litigated in the state courts, and were not substantially affected by the terrorist at-

tacks of September 11.") *See also Goodrich,* 2002 WL 31833646 at *4. ("Congress intended only certain lawsuits to be subject to the original and exclusive jurisdiction of the Southern District of New York").

It is undisputed that the pivotal verbiage of § 408 of the Act, "resulting from" or "relating to" the aircraft crashes of September 11 is ambiguous. Those phrases "standing alone, unfortunately, do not have a clear meaning" or precise direction for application, nor are they qualified nor delimited in a meaningful way. *Graybill,* at 348–49. It is also well documented that Congress passed the Act on September 22, 2001, in relative haste, and only ten days after the tragic attacks. *Id.* at 1. While it is evident that one of the purposes of the Act was to ensure the consistent and efficient resolution of all claims arising out of the September 11 attacks, the contradictory and generalized averments of legislators regarding its jurisdictional scope certainly fortifies this Court's belief that Congress intended to narrowly construe § 408(b)(1) or (b)(4). Therefore, this Court is, like its sister courts, reluctant to attribute expansive effect to those provisions.

### 2. *Federal's Reliance Upon Graybill's Proximate Cause Analysis is Misplaced.*

In *Graybill,* plaintiff, a construction worker assisting in the clean-up efforts at the WTC site, sued the City of New York and the Port Authority of New York and New Jersey for negligence when he was struck by a steel beam at the WTC site. 247 F.Supp.2d at 346. In that case, the Southern District of New York declined jurisdiction and ruled that the case fell outside of the scope of the Act.

The *Graybill* court, recognizing that Congress could not have intended to channel every possible lawsuit arising from the September 11 attacks to the Southern District of New York, presented the proximate cause analysis as a framework for defining the jurisdictional scope of the Act. *Id.* at 350–51. Specifically, *Graybill* interpreted § 408 of the Act such that the Southern District of New York retained jurisdiction in cases where the claimed damage or injury was the foreseeable consequence of the September 11 attacks. *Id.* at 351–52. Federal requests this Court to follow *Graybill* because a majority of Hudson's damages were caused directly by the September 11 attacks. This Court declines to do so because Federal's reliance upon *Graybill* is misplaced.

Clearly, this matter in dispute did not arise from, stem from, result from, or relate to the September 11 attacks. This litigation, facilely put, involves the *existence of insurance coverage,* a dispute that arose in the spring of 2001. Specifically, the gravamen of the declaratory adjudication will be *whether the disputed 44 locations were "scheduled locations" before September 11, 2001, and therefore subject to the $15 million dollar blanket coverage.* The September 11 attacks, albeit a tragic catalyst for Hudson's damages, will carry no eminence in such proceeding. Thus, this Court declines to apply *Graybill's* proximate cause analysis to the herein matter.

Lastly, even if this Court were to consider Federal's argument, this Court would interpret the Act more restrictedly than *Graybill,* whose proximate cause test conceivably confers jurisdiction to all claims that have a strong nexus to the September 11 attacks. This Court follows *Goodrich's* reasoning that Congress predominantly intended to create the federal cause of action in § 408(b)(1) and its corresponding venue clause, § 408(b)(3), for tort actions brought by individuals (or their representatives), who were on board one of the hijacked airplanes or who were present at the crash

site at the time of or in the "immediate aftermath" of the crashes, against all entities that could be held liable either for not preventing the attacks, or for the extent of the damage they caused, or negligently allowed to occur. *Goodrich,* 2002 WL 31833646, at *3.(citing § 405(c)(2)(A)-(C)). This interpretation is "consistent with the Act's dual purpose of airline industry stabilization and victim compensation ... [because it] ensures consistency in judgments and also promotes efficiency through familiarity with the facts of the September 11, 2001 terrorist attacks." *Id.* at *4, n. 4.

## CONCLUSION

In order for a non-diverse action to be removed from a state court, the action must be one that the District Court has "original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States ..." 28 U.S.C. § 1441(b). A cause of action created by a federal statute, like the Act, will confer original jurisdiction upon this Court pursuant to 28 U.S.C. § 1331. Likewise, a transfer shall be accorded if there is want of jurisdiction pursuant to 28 U.S.C. § 1631. The burden of establishing existence of original jurisdiction, and (in this case, the need for transfer) falls on the removing party. If the burden is not met, this Court must remand the action to the State court from which it was removed 28 U.S.C. § 1447(c). This Court finds that Federal has failed to meet its burden to establish original jurisdiction under the Act, and therefore transfer to the Southern District of New York pursuant to § 1631 is not warranted. Accordingly, Plaintiff, Hudson News Company's Petition for Remand is **GRANTED,** and Defendant, Federal Insurance Company's Cross–Motion for Transfer of Venue is **DENIED.** An appropriate Order accompanies this Opinion.

## ORDER

**THIS MATTER** having been brought before the Court upon application of Plaintiff, Hudson News Company, to remand this matter to the Hudson County Superior Court, from where it was removed, and upon cross-application of Defendant, Federal Insurance Company, for transfer of venue; and

**IT FURTHER APPEARING THAT** Plaintiff's Notice and Petition to Remand was properly brought under the provisions of 28 U.S.C. 1447(c), and Defendant's Notice of Cross–Motion to Transfer having been given properly; and this Court having read, and considered the parties' moving papers and oral arguments; and for reasons stated in the accompanying Opinion;

**IT IS** on this 4th day of April, 2003, **ORDERED** that Plaintiff, Hudson News Company's Petition for Remand is **GRANTED;** and

**IT IS FURTHER ORDERED** that Defendant, Federal Insurance Company's Cross–Motion for Transfer of Venue to the Southern District of New York is **DENIED;** and

**IT IS FURTHER ORDERED** that the above-entitled action be and hereby expeditiously remanded to the New Jersey Superior Court–Hudson County, from where it was removed.